**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

LORI W. WILL
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

Date Submitted: May 3, 2022
Date Decided: May 5, 2022

A. Thompson Bayliss, Esquire
Michael A. Barlow, Esquire
Eliezer Y. Feinstein, Esquire
Abrams & Bayliss LLP
20 Montchanin Road, Suite 200
Wilmington, Delaware 19807

Peter J. Walsh, Jr., Esquire
Matthew F. Davis, Esquire
Abraham C. Schneider, Esquire
Patrick A. Lockwood, Esquire
Potter Anderson & Corroon LLP
1313 North Market Street, 6th Floor
Wilmington, Delaware 19801

Raymond J. DiCamillo, Esquire
Kevin M. Gallagher, Esquire
Daniel E. Kaprow, Esquire
Caroline M. McDonough, Esquire
Richards, Layton & Finger, P.A.
920 North King Street
Wilmington, Delaware 19801

RE: *In re Aerojet Rocketdyne Holdings, Inc.*
C.A. No. 2022-0127-LWW

Dear Counsel:

This decision resolves plaintiff Warren G. Lichtenstein's motion to compel. He seeks documents withheld by the defendants and their outside counsel on the basis of the Aerojet Rocketdyne Holdings, Inc.'s ("Aerojet" or the "Company") privilege. Lichtenstein and his three fellow plaintiffs (who join in the motion) comprise half of Aerojet's board of directors (the "Board") and are director nominees on a slate advanced by a Lichtenstein-affiliated entity in an ongoing

proxy contest. The four defendants comprise the other half of the Board and are nominees on a competing slate.

This court previously entered a temporary restraining order preventing either Board faction from acting unilaterally on the Company's behalf or using its resources in connection with the upcoming director election. Lichtenstein's motion asks that the neutrality principles underlying the court's order be extended to the use of the Company's privilege. It raises an unusual question: where two halves of a deadlocked board are competing in a proxy contest, can one half assert the corporation's privilege against the other? I conclude that, in these circumstances, it cannot.

For the reasons explained below, the plaintiffs are entitled to discovery of certain of the Company's privileged information. The defendants have no greater claim to the Company's privilege than the plaintiffs, who are joint clients of Company counsel. The plaintiffs and defendants are adverse to one another—at least in the context of the proxy contest. But it does not follow that one faction of the Board is adverse to Aerojet because the other is aligned with management.

The even division of the Board means that neither side can benefit from the Company's resources—including its privilege—to the exclusion of the other. The motion to compel is therefore granted.

## I.    BACKGROUND

Plaintiffs Lichtenstein, James R. Henderson, Audrey A. McNiff, and Martin Turchin filed this litigation against defendants Eileen P. Drake, Thomas A. Corcoran, Kevin P. Chilton, and Lance W. Lord on February 7, 2022.[1] Lichtenstein is Aerojet's Executive Chairman and a major Aerojet stockholder through Steel Partners Holdings L.P. (together with its affiliates, "Steel").[2] Drake is the Company's Chief Executive Officer and President.[3]

Tensions between Lichtenstein and Drake purportedly developed in late 2020 while the Company was negotiating a merger agreement with Lockheed Martin Corporation. Drake alleged that Lichtenstein—who wanted Aerojet to approach other possible bidders—was "laying the ground work . . . to remove [her] as CEO so he [could] pursue his strategy and personally benefit financially."[4] On October 13, 2021, the Board formed a committee consisting of the other six

---

[1] Verified Compl. for Declaratory J. ("Compl.") ¶¶ 36-39, 41-44 (Dkt. 1).

[2] *Id.* ¶ 36. More specifically, Lichtenstein is the Executive Chairman of Steel Partners Holdings GP Inc., the general partner of Steel Partners Holdings L.P., which held roughly 5.5% of Aerojet's outstanding common stock through an indirect subsidiary when the Complaint was filed. *Id.*

[3] *Id.* ¶ 41.

[4] *Id.* ¶¶ 14-15, 18-19.

members of the Board (the "Non-Management Committee") to investigate Drake's allegations.[5]

On January 25, 2022, the Federal Trade Commission sued to block the Company's merger with Lockheed.[6] In the days following, the Board—facing the strong possibility that the merger would not close and a fast-approaching February 5 advance notice bylaw deadline—was unable to reach an agreement on the composition of a slate of director nominees for the 2022 annual meeting.[7]

On January 28, 2022, Steel delivered a notice to the Company nominating seven director candidates for election.[8] Steel's slate included four incumbent members of the Board—the plaintiffs in this litigation.[9] The Company's six independent directors met to attempt to agree to a compromise slate in late January but never reached a final agreement.[10] Steel amended its Schedule 13D on February 1, 2022 to disclose the nomination of its slate.[11]

---

[5] *Id.* ¶¶ 18-19; *see* Pl. Warren G. Lichtenstein's Mot. to Compel ("Mot. to Compel") Ex. I (Dkt. 140); Mot. to Compel ¶ 18.

[6] Compl. ¶ 20.

[7] *Id.* ¶¶ 21-24.

[8] *Id.* ¶ 25.

[9] *Id.*

[10] *Id.* ¶¶ 26-27.

[11] *Id.* ¶ 28.

Later that day and on February 2, 2022, the defendants, without consulting the rest of the Board, caused the Company to issue a press release and submit related public filings signed by the Company's general counsel.[12] The press release disclosed the Non-Management Committee's investigation and purported to speak on behalf of the Company, expressing "disappointment" with Lichtenstein's decision to launch a "disruptive" proxy contest.[13] On February 3, 2022, the Company's longtime outside counsel, Gibson Dunn & Crutcher LLP, writing in their "capacity as litigation counsel" for Aerojet, told the plaintiffs that their actions in connection with the proxy contest were "bad faith" breaches of fiduciary duty.[14]

The plaintiffs' Verified Complaint for Declaratory Judgment followed on February 7, 2022, along with motions to expedite and for a temporary restraining order.[15] The Complaint seeks two declaratory judgments intended to maintain the Company's neutrality with respect to the proxy contest: the first stating that Aerojet officers, directors, and employees, among others, cannot act on the Company's behalf without Board authorization; and the second stating that such

---

[12] *Id.* ¶ 74.

[13] *Id.* ¶ 75.

[14] *Id.* ¶ 78; Compl. Ex. A.

[15] Dkt. 1.

individuals cannot take actions on the Company's behalf supporting either slate of director nominees so long as the Board remains split.[16]

On February 10, 2022, Gibson Dunn sent an engagement letter to the defendants informing them that Aerojet had agreed to be jointly represented by the firm and to pay Gibson Dunn's fees in connection with the joint representation.[17] The defendants signed the letter over the coming days.[18]  On February 11, 2022, the defendants—individually and derivatively on behalf of Aerojet—and (purportedly) the Company brought suit against the plaintiffs.  Gibson Dunn served as litigation counsel to the Aerojet and the defendants.[19]  The defendants voluntarily dismissed their claims without prejudice on March 7, 2022.[20]

On February 15, 2022, I granted the plaintiffs' motions to expedite and for a temporary restraining order.[21]  The temporary restraining order required the Company and its advisors to remain neutral regarding issues over which the Board was divided.[22]  The order also required Gibson Dunn and Richards, Layton &

---

[16] Compl. ¶¶ 95, 100.

[17] Defs.' and Non-Party Gibson Dunn & Crutcher LLP's Opp'n to Pl. Warren G. Lichtenstein's Mot. to Compel ("Defs.' Opp'n") Ex. 1 (Dkt. 160).

[18] *Id.*

[19] C.A. No. 2022-0146-LWW, Dkt. 1.

[20] Dkt. 55.

[21] Dkt. 38.

[22] Temporary Restraining Order ¶ 2 (Dkt. 41).

Finger, P.A. to withdraw as Company counsel in connection with this litigation.[23]

After a motion to enforce the temporary restraining order was filed and granted,

those firms sought leave to withdraw as counsel for Aerojet on March 9, 2022.[24]

The motion to withdraw was granted on April 20, 2022, following considerable

delay in the retention of neutral counsel for the Company.[25]

The present motion arises from 46 document requests the plaintiffs served

on the defendants and a subpoena *duces tecum* served on Gibson Dunn.[26] After the

defendants and Gibson Dunn served their written responses and objections,[27]

Lichtenstein sought confirmation from the defendants that they would not seek to

invoke the Company's attorney-client privilege against him "other than to protect

(a) confidential communications internal to the Non-Management Committee and

its counsel; or (b) confidential communications regarding the substance of the

internal investigation of Mr. Lichtenstein after the formation of the Non-

Management Committee on October 13, 2021."[28] The defendants rejected that

---

[23] *Id.* ¶ 7.

[24] Dkts. 70, 96.

[25] Dkt. 133.

[26] Dkts. 53, 66; *see* Mot. to Compel Ex. H.

[27] Dkt. 91; Mot. to Compel Ex. L.

[28] Mot. to Compel Ex. I.

request on April 20.[29]  Gibson Dunn also confirmed that, in its view, the plaintiffs'

subpoena sought documents and communications protected by the attorney-client

privilege, which it could not waive.[30]

Lichtenstein filed this motion to compel on April 21, 2022.[31]  He seeks an

order requiring that the defendants and Gibson Dunn to produce documents

withheld on the basis of Aerojet's privilege and that the Company direct its

advisors to produce any information they are currently withholding on the basis of

the Company's privilege.[32]  Two broad categories of documents are in play:

(1) documents dated before October 13, 2021, when a special committee was

formed to investigate Mr. Lichtenstein's alleged misconduct, and (2) documents

dated after October 13, 2021.  Henderson, McNiff, and Turchin filed a joinder to

Lichtenstein's motion on April 22, 2022.[33]

Lichtenstein contends that, as a sitting director, his access to the Company's

privileged information is on equal footing with the rest of the Board unless it falls

within the narrow confines of the Non-Management Committee's investigation.

---

[29] Mot. to Compel Ex. K.

[30] Mot. to Compel Ex. N.

[31] Dkt. 140.

[32] Mot. to Compel ¶ 13.

[33] Dkt. 143.

His position relies on his broad information rights as a director and principles of corporate neutrality.

The defendants argue that the plaintiffs are not entitled to the Company's privileged information because they seek it in furtherance of their proxy contest rather than their fiduciary duties. The defendants further aver that the plaintiffs became adverse to the Company, such that they could no longer expect to be within its privilege, by no later than the time that Steel delivered its nomination notice. They also contend that—even if the plaintiffs were given access to Company privileged information—the court should deny discovery into communications subject to a joint privilege between the Company and defendants.

## II.     LEGAL ANALYSIS

Under Delaware law, a corporation generally cannot assert the attorney-client privilege "to deny a director access to legal advice furnished to the board during the director's tenure."[34] A director's right to information is "essentially

---

[34] *Moore Bus. Forms, Inc. v. Cordant Hldgs.*, 1996 WL 307444, at *4 (Del. Ch. June 4, 1996).

unfettered in nature"[35] and includes "equal access to board information."[36] The

right arises from a director's duty "to protect and serve the corporation."[37]

There are three recognized limitations on a director's right to access:

> First, a "director's right can be diminished by an *ex ante* agreement among the contracting parties." Second, the board can form a special committee excluding a director, and that committee "would [be] free to retain separate legal counsel, and its communications with that counsel would [be] properly protected." Third, privileged information can be withheld from a director "once sufficient adversity exists between the director and the corporation such that the director could no longer have a reasonable expectation that he was a client of the board's counsel."[38]

The first limitation is not at issue here. No *ex ante* agreement limited the

Aerojet directors' access to information.

The second limitation is implicated but not in serious dispute. It allows a

board committee formed with the excluded director's knowledge to engage in

privileged communications with its counsel, "at least to the extent necessary for the

committee's ongoing work, such as conducting a special committee investigation

---

[35] *Schoon v. Troy Corp.*, 2006 WL 1851481, at *1 n.8 (Del. Ch. June 27, 2006).

[36] *Moore Bus. Forms.*, 1996 WL 307444, at *5.

[37] *Henshaw v. Am. Cement Corp.*, 252 A.2d 125, 128 (Del. Ch. 1969); *see SerVaas v. Ford Smart Mobility LLC*, 2021 WL 5226487, at *3 (Del. Ch. Nov. 9, 2021).

[38] *Ford Smart Mobility*, 2021 WL 5226487, at *2 (quoting *Kalisman*, 2013 WL 1668205, at *4-5 (Del. Ch. Apr. 17, 2013)).

or negotiating an interested transaction."[39] Lichtenstein acknowledges that he is not entitled to confidential communications post-dating the Non-Management Committee's formation on October 13, 2021 that concern the substance of its investigation. And the defendants do not meaningfully argue that he is not entitled to communications created, sent, or received before that date. There is no indication that Lichtenstein had reason to believe that he would be the subject of a Company investigation before the Committee's formation.[40] Instead, the defendants' arguments concerning pre-October 13, 2021 documents concern focus—unpersuasively—on relevance.[41]

---

[39] *In re CBS Corp. Litig.*, 2018 WL 3414163, at *4 (Del. Ch. July 13, 2018).

[40] The defendants made a half-hearted argument at the motion to compel hearing that adversity existed earlier because Lichtenstein received a cease-and-desist letter from the Company's non-executive directors in September 2021. Gibson Dunn & Crutcher's Mot. to Quash and for a Protective Order and Pl.'s Mot. to Compel Hr'g Tr. May 3, 2022, at 38-39 (Dkt. 202); *see* Defs.' Opp'n ¶ 6. The directive followed statements made by Lichtenstein about a possible merger between the Company and Lockheed Martin. *Id.* To the extent that letter created any form of adversity, that adversity would only exist regarding the potential merger. *See In re CBS*, 2018 WL 3414163, at *7 (granting motion to compel "other than [with respect to] the matters falling within" the specific subject of adversity).

[41] The defendants' written responses to the plaintiffs' document requests include numerous relevance objections. Lichtenstein's motion states that it addresses only the "privilege objections" and that Lichtenstein "reserves the right to challenge [defendants'] other meritless objections." Mot. to Compel n. 2. The defendants' opposition, however, argues that the irrelevance of documents sought provides grounds to deny the motion. For example, they argue that, because the proxy contest arose in early 2022, documents from before October 13, 2021 are irrelevant. Defs.' Opp'n ¶ 28. To the extent that relevance is even a question before me, it bears emphasizing that the scope of discovery is "broad and far-reaching." *Cal. Pub. Emps. Ret. Sys. Coulter*, 2004 WL 1238443, at *1

The parties' disagreement centers on whether the adversity limitation provides grounds for privileged documents and communications created after October 13, 2021 (excluding those revealing the substance of the investigation) to be withheld from the plaintiffs. Application of the adversity limitation "is assessed in view of the reasonableness of a director's own expectations."[42] According to the defendants, the plaintiffs could not have reasonably expected to remain clients of the Company's counsel after Steel delivered its January 28, 2022 notice of intent to nominate a slate of directors.[43]

The defendants assert that the plaintiffs are adverse to the Company because of their alignment with Steel, which they paint as an activist investor engaged in a takeover attempt. Yet each of the competing slates includes four incumbent directors. One includes the Company's Executive Chairman and the other its Chief

---

(Del. Ch. May 26, 2004) (quoting *Pfizer, Inc. v. Warner-Lambert Co.*, 1999 WL 33236240, at *1 (Del. Ch. Dec. 8, 1999)). Documents from before October 13, 2021 that bear on whether Company resources were misused to advance the interests of half of the Board are sufficiently relevant.

[42] *In re Howard Midstream Energy P'rs, LLC*, 2021 WL 4314111 (Del. Ch. Sept. 22, 2021).

[43] *See SBC Interactive, Inc. v. Corp. Media P'rs*, 1997 WL 770715, at *6 (Del. Ch. Dec. 9, 1997) (explaining that a director is normally "entitled to equal access to legal advice furnished to the other board members" unless her interests "come into conflict with the interests of the corporation on a given issue" and "appropriate governance procedures" are employed such that the director no longer has "a reasonable expectation that [s]he was a client of the board's counsel on a par with the remaining directors").

Executive Officer. Neither serves as the Company's slate. Why one slate should be considered hostile to the Company and the other friendly is unclear.

It is obvious that the plaintiffs and defendants have developed some adversity toward one another. But that adversity is not to the Company. Setting aside the substance of the investigation, both sets of directors remained entitled to rely on the Company's in-house and outside counsel for legal advice as joint clients.[44]

---

[44] *See Kirby v. Kirby*, 1987 WL 14862, at *7 (Del. Ch. July 29, 1987) ("The directors are all responsible for the proper management of the corporation, and it seems consistent with their joint obligations that they be treated as the 'joint client' when legal advice is rendered to the corporation through of its officers or directors."); *In re WeWork Litig.*, 250 A.3d 901, 910 (Del. Ch. 2020) ("It is because 'directors are responsible for the proper management of the corporation' that they should 'be treated as a joint client when legal advice is rendered to the corporation through one of its directors or officers.'" (quoting *Kalisman*, 2013 WL 1668205, at *4)); *Kalisman*, 2013 WL 1668205, at *4 (explaining that a joint client "has a right of equal access to the materials he seeks"—communications with a common interest between joint counsel and other joint clients—"in light of his status as a joint client of the subpoenaed law firms"). When former co-clients become adverse and "sue one another, the default rule is that all communications made in the course of the joint representation are discoverable." *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 366 (3d Cir. 2007) (applying Delaware law and citing Delaware Rule of Evidence 502(d)(6)); *see also In re Sutton*, 1996 WL 659002, at *5 (Del. Super. Aug. 30, 1996) (describing Delaware Rule of Evidence 502(b)(5) as "providing that where an attorney jointly represents two clients who later become adversarial parties in litigation, one party cannot assert attorney-client privilege to avoid disclosure of communications which were made during the joint representation."); Restatement (Third) of the Law Governing Lawyers § 75(2) (Am. Law. Inst. 2022) ("Unless the co-clients have agreed otherwise, a communication [that otherwise would be subject to attorney-client privilege] is not privileged as between the co-clients in a subsequent adverse proceeding between them.").

It would also defy the principles animating 8 *Del. C.* § 141(a) to find that half of a board faction can rely on its association with management to benefit from the protections of the company's legal advice to the exclusion of their fellow directors.   Management of a Delaware corporation cannot unilaterally decide which directors will receive which information.[45]   In *In re WeWork*, management decided to withhold privileged information from a special committee.[46]   Chancellor Bouchard explained that the application of the adversity limitation did not apply because "the [corporation's] governing body—the Board—made no decision to withhold the Company's privileged information."[47]

It follows that the defendants' alignment with Aerojet management cannot provide them with a greater claim to the Company's privilege than the plaintiffs. As this court has previously explained, the defendants cannot "co-opt the

---

[45] *Hall v. Search Cap. Grp., Inc.,* 1996 WL 696921, at *2 (Del. Ch. Nov. 15, 1996) (explaining that management "cannot pick and choose which directors will receive [which] information"); *In re WeWork*, 250 A.3d at 909 (same).

[46] 250 A.3d at 909.

[47] *Id.* (quoting *Kalisman*, 2013 WL 1668205, at *5); *see id.* at 911 ("[D]irectors of a Delaware corporation are presumptively entitled to obtain the corporation's privileged information as a joint client of the corporation and any curtailment of that right cannot be imposed unilaterally by corporate management untethered from the oversight and ultimate authority of the corporation's board of directors."); *Rainbow Navigation, Inc. v. Yonge*, 1988 WL 7389, at *1 (Del. Ch. Jan. 29, 1988) (ordering production of privileged communications and documents to both sides during the pendency of a dispute over who constituted the board).

company's resources" to further a campaign against the plaintiffs' proxy contest.[48]

"The privilege exists for the benefit of the corporation—not to any particular corporate constituency," including an individual director.[49]

The defendants further contend that the plaintiffs are not entitled to any discovery related to Gibson Dunn's joint representation of Aerojet and the defendants in connection with this litigation. That representation was allegedly entered into because "Aerojet [] agreed to such joint representation."[50]

There are several problems with that argument. As an initial matter, it would only apply after February 11, 2022 (the date the first defendant signed the agreement) at the earliest—four days after the plaintiffs' complaint and TRO motion were filed and four days before the TRO was granted.[51] More crucially, there is a serious question of who could have validly authorized the joint defense

---

[48] Dkt. 38 at 81.

[49] *Ford Smart Mobility*, 2021 WL 5226487, at *3; *see Cole v. Wilm. Mat'ls, Inc.*, 1993 WL 257415, at *1 (Del. Ch. July 1, 1993) ("It is elementary that when they represent a corporation, lawyers represent the entity and do not thereby represent any single corporate constituency."); *see generally* Del. Lawyers' R. Prof'l. Conduct 1.13.

[50] Defs.' Opp'n Ex. 1.

[51] *Id.*

agreement on Aerojet's behalf given the context of the representation and the lack of Board approval.[52]

But providing the plaintiffs access to advice delivered to both Aerojet and the defendants would not constitute a waiver in any event. Again, the plaintiffs—as incumbent directors—are within the Company's privilege and have access to legal advice rendered to the corporation. The plaintiffs retained the right to the legal advice Gibson Dunn delivered to the Company at least until the landscape changed on March 9, 2022, when Gibson Dunn moved for leave to withdraw as Aerojet's counsel. The Delaware Rules of Evidence provide that "no privilege" exists for communications "relevant to a matter of common interest between or among [two] or more [of a lawyer's] clients if the communication was made by any of them to a lawyer retained or consulted in common, when offered in an action between or among any of the clients."[53]

---

[52] At oral argument, the defendants referred the court to *Rainbow Mountain, Inc. v. Begeman* for the proposition that management could hire corporate counsel without board approval. 2019 WL 6724420 (Del. Ch. Dec. 5, 2019). The outcome in that case depended on bylaws that explicitly gave the corporation's president that power, however, and no such argument has been made here. *Id.* at *2; *see also* Del. Lawyers' R. Prof'l. Conduct 1.13(e) ("A lawyer representing an organization may also represent any of its directors, officers, employees, members, shareholders or other constituents, subject to the provisions of Rule 1.7 [on conflicts of interest]. If the organization's consent to the dual representation is required by Rule 1.7, the consent shall be given by an appropriate official of the organization other than the individual who is to be represented, or by the shareholders.").

[53] D.R.E. 502(d)(6).

\*        \*        \*

For these reasons, the motion to compel is granted.  I encourage the parties to discuss ways to continue to preserve the Company's privilege in advance of trial.  Of course, the parties are bound to treat the information as confidential pursuant to their fiduciary duties to Aerojet.  But an additional tier to the confidentiality order in this case or a proposed order pursuant to Delaware Rule of Evidence Rule 510(f) may be useful.[54]

Sincerely yours,

*/s/ Lori W. Will*

Lori W. Will
Vice Chancellor

cc: All counsel of record (by *File & ServeXpress*)

---

[54] This decision does not resolve Gibson Dunn's Motion to Quash and For a Protective Order, which will be addressed by the court separately.  Dkt. 161.